There are two issues in this appeal arising under California Wage and Hour Law. The first asks, what are an employer's obligations to its employees when it rounds all time entries to the nearest quarter hour? And the second asks, how should an employer calculate the regular rate of pay for purposes of overtime when it pays a non-discretionary annual incentive bonus based on the percentage of the previous year's earnings? Both of these issues arise in two contexts, class certification and summary judgment. I'll address each in turn. Let me start with the rounding and class certification. It's undisputed that Converse's timekeeping system is set up so that it could accurately record to the minute all of the time work by Converse's employees. Mr. Rubin, would you agree that Converse's plan is consistent with what See's Candy Shop has already addressed? No, no, I would disagree and I would actually, I believe that was Judge Mendoza who asked the question. I would say it's a lot closer to the opinion that you wrote for the panel in Solly v. Corona Regional Medical Center and I would also say that it is far closer to the most recent decision by the California Court of Appeal in Camp v. Home Depot, a case that the California Supreme Court is now granted review in. Well, counsel, but Camp is not the authority that has been followed in California, isn't that true? And isn't it true that it's Sally that, or excuse me, it's See's Candy Shop that's been No, Your Honor, that's, with due respect, that's old news. Camp is the most recent case. Camp was decided in 2022, See's was decided in 2012 and the California Supreme Court has granted review effective February 1st, 2023. Should we try to predict what the Supreme Court is going to do? Should we defer our decision until the Supreme Court decides Camp? What's your recommendation? Ultimately, you have to predict on the merits what the California Supreme Court's going to do. That's cases like Dmitrovich, but for the purposes of class certification, it doesn't matter what the California Supreme Court's going to do. There is a common question of law. Do you look to See's or do you look to Camp? That is a common class-wide question and the court should have granted certification. The court, the district court, will ultimately determine based on its assessment or the California Supreme Court decision in Camp as to what the law is. But in terms of certification, no, there's no reason for this court in the context of class certification to decide whether Camp better states California law than See's. And I take it there have been California cases that have granted class certification to these rounding claims. You know, See's Candy was one, and I think Donahue was another. I take it your point is that there are common questions that can predominate on these rounding claims regardless of how the Supreme Court decides this. Absolutely. And actually, one of the reasons Camp is undoubtedly right is because it follows the most recent California Supreme Court decisions, Donahue and Trestor, which wasn't a rounding case but was a minimum amount of time, has to be paid under California. So the likelihood, if you're predicting what the California Supreme Court's going to do, is that Camp, which is binding precedent in California, the Supreme Court made that clear when it granted review, but that's likely to be the law. Well, if I might just jump in. So in Camp, the plaintiff, as I understood it, had a net loss from rounding of 470 minutes. In other words, the plaintiff clearly got the short end of the stick. In this case, and you can tell me if I'm wrong, but Madeira, your client conceded that he broke even or even gained more than 60 percent of his time card punches came out ahead. So even if you're right about Camp, how is he the right person to have this claim? Your Honor, with due respect, you are wrong. That is what the district court said, citing defense expert. But there's competing testimony by plaintiff's expert, which precludes summary judgment. And look to page 1420 to 21. The expert, Jared Gorlick, on 75.5 percent of the shifts affecting 89.6 percent of the employees, the employees were underpaid. They were underpaid an average of 2.9 minutes per shift and a total of under underpayment of 15.7 hours per employee. And as to Brian Madeira himself, he was and this is 1421 to 22. He had 13.9 underpaid hours. There is at least a factual question on summary judgment as to which expert is correct, which analysis is correct. This was sampling for the class and the specific time records going over two and a half years for plaintiff. But no, Your Honor, we disagree. And the factual record is absolutely in conflict. This rounding hurt Mr. Madeira and it hurt the overwhelming majority of plaintiffs of the class members who work for Converse. And therefore, whether you apply seized, whether you apply camp, it comes out the same way. And it's just, again, as I pointed out before, like the Sally case in which the court reversed as you recall, Judge Mendoza, you reverse the denial of class certification. And it was a case where the registered nurses who were the class members there, the defendant said, well, they shouldn't be compensated for the rounded time. This is page 1009. They were waiting in the break room. They were getting coffee or chatting with their coworkers. And what the panel said, and it's still binding Ninth Circuit authority, is no, you look to see what the policies of the employer are. And you evaluate those policies under California Supreme Court cases like Meridian, like Mendiola, which make clear that a worker doesn't have to be performing a work task to be entitled to compensation. Mr. Rubin, even if we agreed with you that the district court might have erred in its predominance inquiry for a rounding and we sent it back to the district court, the district court has to wait for the Supreme Court to act on this threshold question about rounding as a violation of California labor law, doesn't it? At some point, even if we get past the predominance inquiry, should we be deciding or anticipating something of such a major question that where the courts of appeal have been in different places? You could hold this case for the California Supreme Court, but if we are correct, if our expert is correct in his analysis of the 15% of the sample timesheets, which is all the district court gave him, and the district court ultimately concludes that he is right that the vast majority of employees were underpaid. It doesn't matter whether CAMP is the law or whether CEAS is a law. Under either approach, the rounding did not result in the fair and equal treatment of the employees viewed as a whole. So even under the CEAS test, we prevail. So no, it doesn't have to be delayed pending that decision because the facts would support not only class verification, but judgment on behalf of the entire class and certainly judgment on behalf of Mr. Madera given the facts of his particular case. With respect to rounding quickly and summary judgment, three quick points. The district court actually never decided whether the lost time of the plaintiff was compensable or not. It based, it was just a one page of its order denying summary judgment. First on the ground, there was no reference to rounding. Then based on its overall perception, you don't need to allege rounding under California law or under Rule 8 in order to be alleging an off the clock claim. The arguments that the district court relied upon as the basis for granting summary judgment to converse with respect to Mr. Madera personally were simply incorrect. Let me move on to the second set of issues in the case with respect to the calculation of overtime. And here, the question really comes down to whether California law, this time you definitely are going to have to predict what the California Supreme Court would do. Well, I mean, unfortunately on your end, the Lem versus Ecolab decision came out in the middle of briefing and you have a published state appellate court decision that goes against your argument. And as far as I know, that's the only published authority on it. And so in the absence of some other indication, why isn't that the best predictor of what the California Supreme Court might do? Because you have to dig underneath the, that's a good point, but you have to dig underneath the surface of the case and to assess the analysis, try to follow the analysis, particularly in that section of the brief with footnote 9 where the court tried to reconcile the two versions, but ultimately you have to look to the legal arguments and predict what the California Supreme Court is going to do with respect to the legal arguments. So let me explain what those legal arguments are and why Lem was incorrectly decided. The DLSC, the State Labor Board, has a different standard than the Department of Labor under the FLSA. We know that the law on overtime is that the overtime has to be paid at no less than 1.5, the regular rate of pay. We know that the regular rate of pay has to include every form of compensation earned, including non-discretionary bonuses. The federal government, the DOL, creates a special carve-out for that in the regulations, but if you look at the IWC wage orders, there are many instances in which the IWC has adopted carve-outs from DOL. It did not adopt this carve-out. If you look at the DLSC, its enforcement manual, its opinion letters, it adopted many carve-outs, many exceptions that the DOL did. It did not accept this. Instead, the DLSC enforcement manual has two separate sections. This is 49.241 and 29.242. The first applies when the bonus is based on a percentage of production or some formula other than flat amount. The second is when it's a flat amount. It's that first one, 49.2.4.1, that governs this case. It's clear, and you're predicting what the California Supreme Court's going to do, the California Supreme Court, in cases like Alvarado, made clear that although the DLSC determination is not binding, the court has to look to it to see whether it's persuasive because it's, and I'll quote here, a formal compilation that evidences considerable deliberation at the highest policy-making level of the agency where the DLSC has expertise and special competence. Let me ask you this just to get right to the point. Lem's analysis seems to be that the percentage-based bonus already incorporates overtime payment, and so, therefore, it's already properly compensated under California law. You don't have to pay overtime on top of overtime. That seemed to be, as I read, Lem, the thrust of the court's analysis. Sure, and we could see that applying in a case where you have a percentage set in advance, and every week the employer pays a certain percentage for the regular rate and then one-and-a-half times that much for the overtime. This was a different case. This is probably not even covered under the federal regulation. This is done at the end of the year. The percentage isn't known in advance. Just posit a situation where, and this is real life, the employee has different amounts of overtime every week, five hours one week, seven hours a week, ten weeks. If you pay a fixed percentage of annual earnings, they're not being allocated week by week. There's no one-to-one correspondence between the percentage that's paid and the amount of overtime. In weeks where someone works high overtime hours, they are necessarily going to be undercompensated under the way that this company calculates. If possible, I'd like to reserve the rest of my time for a brief Q&A. That's fine. Thank you. But I can address this further later. Thank you, Your Honor. May it please the Court, this is Daniel McQueen of Peering for Commerce. If I may start with the regular rate argument, I think that Commerce has a good position here because of the LEM authority that did come down in the middle of briefing, as Your Honor has noted. I would like to note that Mr. Rubin has argued that the percentage of total earnings bonus methodology should not be accepted under California law because it's not a recognized carve-out to what goes into the regular rate. And I would agree in the sense that it is not a carve-out at all. It is a way to calculate the regular rate, and that's what LEM decides and explains. And so, for example, if someone gets, in week one of the year, $100 worth of overtime, and that was correctly calculated based on the regular rate that was earned in that week, and at the end of the year we pay 10% of that person's overtime, that person's bonus attributable to that week will be $10. If we go to the next week, and that person got $50 of overtime in that week, and that overtime was correctly calculated based on a correct regular rate calculation during that week, and we pay the same 10%, that person is going to get $5 of overtime correctly calculated based on the regular rate for that second week, and so on and so forth. So as opposed to what Mr. Rubin was saying, it is in fact exactly what happens when you calculate it based on a percentage of the total yearly earnings methodology. Would you go to the rounding claim, if you would? Yeah, absolutely. The rounding claim has a couple of elements that I don't want to lose sight of. First, rounding was not alleged in the complaint. As it's set forth in Mr. Ahar's declaration in the appendix,  until there was a meet-and-confer email sent by Plaintiff's Counsel on the day that Plaintiff filed their motion for class certification. Before all that happened, there was a meet-and-confer about the initial complaint that said, essentially, this complaint is very vague. We don't know what unpaid wages you are asking. But Converse was put on notice. They knew that they were making this claim. Obviously, during the class period of time, there was extensive briefing on the matter. So what, if any, prejudice would you have received from them not including it in the claim? The prejudice is that the deposition of the plaintiff was already taken and done and completed before Converse knew about the claim. The prejudice is that the declarations and the strategy was already developed on how to defeat class certification before Converse knew of the claim. As I understand it, didn't the discovery period extend for another year or so? Did Converse not have the ability to redepose the plaintiff if need be on this particular issue? Yes, Your Honor. I believe that discovery was still open. But the point is that Converse should not have to go and play catch-up like that. The pleading set forth what should be in the complaint, and there shouldn't be a need for Converse to do that. Well, if you could go to the substance of the argument, not necessarily whether or not you provided sufficient notice. I understand, Your Honor. I agree with some of the sentiment that's been made clear, I think, by the questions posed by the panel. There is no need for the court, at this point, to make a decision as to who is right. As between the C's authority, C's Candy line of authority, which has existed since 2012 in California and has been continued in AHMC, the David case, and the Ninth Circuit's Corwin case, and has gone on for a decade. And then there is one decision called Camp. As everyone knows, because Mr. Rubin has said so, it is now on appeal to the California Supreme Court. I believe this panel does not and probably should not decide that issue here today. Let me ask this. I have a bit of a concern about how the district court treated the predominance question about rounding and the court's conclusion that individualized issues predominated. And so that's separate from what the California Supreme Court is going to do to decide whether there's a valid claim at all over labor code violations. But can you speak to the predominance question itself? And then let us know what you think about what we should do about that. Is it something we should pause ourselves or send it back to the district court to pause if my panel members agreed? What would you do in this circumstance? Yeah. Here the court has to give deference to the trial court's ruling on the predominance inquiry, and it has to look for legal error. And if there's no legal error, it has to give, you know, uphold the ruling unless something is clearly erroneous. I'm summarizing the standard. Here there was no legal error, unlike in Sally. In Sally, what the panel held is that the district court did not fully consider the standard of what constitutes hours worked under California law, because under California law, hours worked constitutes either hours that are suffered and permitted to work or hours that are subject to control. In Sally, the defendant argued that employees were not suffered and permitted to work because they would clock in and then continue to do their own thing. They would drink coffee. They would chat with their co-workers, et cetera. And the trial court credited that evidence and said, well, you're correct. They were not actually working. They were not suffered and permitted to work. And under CS Candy, I can consider that evidence and find that there are no predominant common issues. And Sally said, we agree with that analysis. However, it was incomplete. And that was an error of law. That is because the trial court or district court did not also consider whether or not the time was subject to control. And there, there was evidence that the time was subject to control because that employer had a very unusual policy, which was that employees, once they clocked in, they were forbidden from leaving the premises of the employer, meaning they just had to stay there and could not use the time effectively for their own purposes, which is fairly good evidence that they were under the employer's control. Well, I mean, what do we know in the record here about Converse employees? And are they allowed to just wander off when they've clocked in? Or I guess as I read Sally, I'm not sure that the district court conducted that sort of control analysis here either. I am convinced that the district court did. First, because in its order, it said it did. It looked at both factors, the subject, the suffered and permitted standard and the subject to control standard. It looked at the evidence and said, here, people would clock in. And admittedly, much like in Sally, they would go and do their own things. And here the district court did not make the same mistake that the court did in Sally. It looked at what was work time under both factors under California law and looked at whether that time was subject to control as well as suffered and permitted by Converse. And here it said there was evidence through the declaration submitted by Converse, two declarations from supervisors and two declarations submitted by employees that said they were not subject to control of Converse during the time after they clocked in and before they started actually working. And so here, the trial court's own order made the required findings. And it was based on four declarations. And so there is not a Sally problem as I see it. Why not? I mean we're at summary judgment, so why would the fact that defendants have put forward a declaration mean that it's conclusive? That was not a summary judgment finding, Your Honor. That was a predominance finding on the class certification ruling. Well, I guess let me take a step back. So you have a uniform company policy of rounding to the quarter hour. And so that is a – at first blush, that seems to be a common question. It's a commonly applied company policy. And then you have at least plaintiff statistical evidence that shows that in light of that company policy that there are a number of employees that may be getting deficient or underpaid for that, maybe 75%. And then lastly, under Sally, that these things can be looked at by defendant's own conduct, not the individual actions of employees. Why aren't those predominant questions that could be handled on a class-wide basis as several state courts have done? You know, C.S. Candy and Donahue both treated these types of claims on a class-wide basis. I'm not saying that they can never be decided on a class-wide basis or that it is always inappropriate to do so. But I hear that Your Honor is saying that they always should be whenever there is a rounding policy. And here I don't think that is correct when there is substantial evidence in the record that the trial court credited, and that was not an erroneous finding, which said that people, in fact, did clock in, were not suffered and permitted to work, and also were not subject to the control of the employer. And therefore, time that was quote-unquote rounded off to their disfavor should not count against converse when you're looking at the overall impact of the rounding policy. And so that is why the trial court made the decision, I believe, that it did. And there are certainly decisions that are from the Ninth Circuit where that decision or that logic has been followed. We bring up them. They're the Shipra decisions, prior decisions, Angeles decisions, Foran decisions. So this is not a unique sort of argument, and it all stems from the language from the Seize Candy decision itself, where the California Court of Appeal looked to what employees were actually doing when they were clocked in but not yet working and looked at that so-called grace period. And it said that that sort of activity would be relevant to the inquiry. Now, of course, there the court went on and made some other decisions, and the rest is history. But it did say that that sort of factual inquiry would be relevant to deciding whether or not to round the claim. I'm sorry to interrupt you, but the important point that I read about Seize Candy is those factual inquiries did not defeat class treatment. There were two classes that were certified in that case. The court was discussing these factual disputes in the context of a summary adjudication motion. So there were genuine disputes of fact that led this to have to go to trial, but it didn't defeat class treatment. And so I guess that would be my rejoinder to you. I'm not so sure that we're having something where individual issues predominate. Well, I agree. I agree that Seize Candy, at least Seize Candy 1, was a summary judgment case, and so was Seize Candy 2. However, I don't think Your Honor can substitute the panel's judgment for what the district court did because I don't think that there was an error of law here. Instead, what we have here is the court looked at what the correct legal standard was, as the Ninth Circuit Court of Appeals said in Sally, and said, I'm going to look at the evidence which is before me, which are these declarations. I'm going to assess them as I see fit, and then I'm going to make a decision based on my review of the evidence. And that is what the district court did. And I believe that if this panel comes in and says, you know what, I just think we have a different decision, I don't believe that that panel is acting properly. I instead think it's substituting its judgment for that of the district court. I don't think that would be a correct decision under the law. Anything else? I can certainly ask or answer any questions. I can see that I am over time, or I believe I'm almost out of time. Do my colleagues have any questions? No other questions on our end. Thank you. Thank you. Mr. Rubin, you have a little bit of time left for your rebuttal. Thank you. Let me cite two provisions in the record. First, the First Amendment complaint, amended complaint at 1608 and 09 in particular, where plaintiff alleged that he and other class members were deprived of minimum wages for all hours worked because defendant required, permitted, and suffered them to work off the clock and illegally and inaccurately recorded the time in which they worked. That is sufficient under Landers and Rule 8. Secondly, I'd like to point to the Statement of Policies. This is 1457. These are the written policies that every declarant has said are binding and that everyone complies with and the plaintiff in his deposition said he complied with. These make clear that this company told its employees that they will be compensated for preparatory time, waiting time, on-call time. The work I'm quoting from it, 1457, work time includes more than just hours actually worked. Depending on the circumstances, time spent waiting on duty at a prescribed workplace or on converse premises also may qualify as work hours. All-time work must always be recorded exactly as it occurred. When not working, employees must be clocked out. This is the type of policy that in cases like Sally and others show that the message that was communicated to the employees is once you clock in, you're on the clock, you're entitled to be paid, and the rounding policy, the converse applied, deprived employees of those wages under California law. Thank you. Thank you. Counsel, thank you both for your arguments. The matter will stand submitted. Thank you so much.
judges: SANCHEZ, MENDOZA, Donato